# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

STEPHANIE B.,[1]  )
    o/b/o B. M. R.  )
                                            )
        Plaintiff,  )
                                            )     CIVIL ACTION
v.  )
                                            )     No. 21-1181-JWL
KILOLO KIJAKAZI,  )
Acting Commissioner of Social Security,  )
                                            )
        Defendant.  )
_____)

## MEMORANDUM AND ORDER

Plaintiff[2] seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits for her minor son B.M.R. pursuant to section 1614(a)(3)(C) of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(C) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] Plaintiff is a mother seeking SSI benefits for her school-aged son. Throughout this opinion she is referred to as Plaintiff. Her son is referred to as B.M.R. or as the claimant.

Plaintiff protectively filed an application for SSI benefits for her minor son on November 8, 2018. (R. 15, 187). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in assessing B.M.R.'s ability to function in the domain of acquiring and using information.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

To qualify for SSI benefits, the child's income and assets (including those imputed from the child's parents) must fall below a certain amount and he must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  The child claimant bears the burden of proving that his impairment meets or equals a listed impairment.  Hall ex rel. Lee v. Apfel, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000).

The Commissioner has promulgated regulations which establish a three-step sequential evaluation process to evaluate a child disability case.  20 C.F.R. § 416.924; see also, Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237-38 (10th Cir. 2001).  In the first step, if the child is engaging in substantial gainful activity, a finding of nondisability

3

is made and the claim is denied. 20 C.F.R. § 416.924(b). If not, the Commissioner continues with the second step to determine whether the child has a medically determinable impairment or combination of impairments which is severe. Id. § 416.924(c). If the child has a severe impairment, the Commissioner continues with the third and final step, and determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. Id. § 416.924(d).

An impairment meets a listing if it meets all the medical criteria contained in a listing. Id. § 416.925. An impairment is medically equivalent to a listing if, without considering age, education, or work experience, it is at least equal in severity and duration to the criteria in the listing. Id. § 416.926. To be functionally equivalent, the impairment must result in limitations that functionally equal a listing. Id. § 416.926a. In other words, "it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. § 416.926a; see also, Briggs, 248 F.3d at 1238. The child's impairment must also meet the duration requirement—lasting or expected to last twelve months—before the child can be found disabled. Id. §§ 416.906, 416.924(d)(1); Davenport v. Apfel, 151 F. Supp. 2d 1270, 1272 (D. Kan. 2001).

To determine functional equivalence, the Commissioner must analyze six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health

4

and physical well-being.  Id. § 416,926a(b)(1)(i-vi); see also Briggs, 248 F.3d at 1238 (recognizing the six domains).

In evaluating a child claimant's ability to function in each domain, the Commissioner will seek information to answer the following questions about whether the claimant's activities are typical of other children the claimant's age who do not have impairments:  (1) What activities can the claimant perform?  (2) What activities is the claimant unable to perform?  (3) Which of the claimant's activities are limited or restricted compared to other children the claimant's age who do not have impairments?  (4) Where does the claimant have difficulty with his/her activities—at home, in child care, at school, or in the community?  (5) Does the claimant have difficulty independently initiating, sustaining, or completing activities?  (6) What kind of help does the claimant need to do his/her activities, how much help is needed, and how often is the help needed?  Id. § 416.926a(b)(2)(i)-(vi).

Functional equivalence will be found only if a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain.  Id. § 416.926a(a). A "marked" limitation is "a limitation that is more than moderate but less than extreme." Id.  To constitute a "marked" limitation, the claimant's impairment must interfere seriously with his ability to independently initiate, sustain, or complete activities.  Id. § 416.926a(e)(2)(i).  This may mean serious limitation exists in only one activity, or in several activities.  Id.

"Extreme" is the rating given the worst limitations and occurs when a claimant's impairment interferes very seriously with his or her ability to independently initiate,

5

sustain, or complete activities. Id. § 416.926a(e)(3)(i). An "extreme" limitation does not necessarily mean a total lack or loss of ability to function but is more than "marked." Id.; see also, Briggs, 248 F.3d 1238, n.1 (stating definition of "functional equivalency," and "marked" and "extreme" limitations). In considering whether a child has "marked" or "extreme" limitations in a domain, the agency examines all the information in the record and compares the child's functioning to the typical functioning of children his age who do not have impairments. Id. § 416.926a(f)(1).

The court addresses the error alleged in Plaintiff's Social Security Brief.

## II. Discussion

Plaintiff argues that in finding B.M.R. has less than a "marked limitation in acquiring and using information, the ALJ relied heavily on notations in the record that B.M.R. showed progress in reading comprehension and had the ability to receive grade-level math." (Pl. Br. 7) (citing R. 20). She argues such heavy reliance is erroneous because the remainder of the record documents "a marked limitation in this domain" and "the ALJ downplayed the extensive accommodations B.M.R. received to obtain any progress and failed to resolve the inconsistency between the evidence he found supported by the record and his conclusions about functional equivalency." Id., at 7-8. She argues the ALJ acknowledged only that B.M.R. required a slower pace than other students despite that the record shows he required extensive help. Id. at 8. She argues that despite B.M.R.'s progress in school the record supported finding a marked limitation in acquiring and using information. Id. This is so, in Plaintiff's view because B.M.R. remained

6

"well-below average in his ability to understand and use information." (Pl. Br. 8-9) (citing an Aimsweb Reading Test, R. 2151). She noted B.M.R.

> tested "well-below average" in the ability to understand the meaning of words (without context), a below average ability to understand literacy and informational text, and a well-below average ability to read stories aloud. The evaluator indicated that B.M.R. needed extra cues/prompts, inclusion support, additional time, and a separate quiet setting in reading class and general education math class. The evaluator noted that B.M.R. struggled with writing due to illegibility unless reminded to slow down, and he required extra cues and prompts. Similarly, he struggled with spelling so he received a modified list of spelling words for weekly spelling. His IEP [Individualized Education Plan] also required him to use the Resource Room for instruction outside of the classroom in order to make progress.

Id. at 9 (citations omitted, citing R. 2151, 2152, 2154). She argues "the ALJ 'effectively ignored' this highly probative evidence by indicating that B.M.R.'s only setback in acquiring and using information was 'a slower pace.'" Id.

Plaintiff argues the ALJ failed "to acknowledge the significant efforts that B.M.R.'s teachers put into his learning to make any progress possible," and should have discussed in further detail "the extensive level of intervention B.M.R. required in school." Id. at 10. She argues, "The ALJ's failure to address the extent of accommodation and help that B.M.R. required – daily special education services in a resource room with prompting, cues, quiet places, and lower expectations in workload or level of complexity – violated SSR 09-3p and rendered the ALJ's assessment of functioning in this domain unsupported by substantial evidence." Id. at 11.

Plaintiff argues, "The remaining evidence also supported a marked limitation in acquiring and using information." Id. She cites in support of this proposition B.M.R.'s testing scores (at the beginning of his first grade year and expressed in percentiles and

7

quartiles); id. (citing R. 337, 343, 344-45, 351-52) records of individual therapy, group therapy, attendant care, and case management services; id. (citing R. 918-2752); and Teacher Questionnaires completed by B.M.R.'s special education teacher. Id. at 11-12 (citing R. 219, 277, 296). Plaintiff acknowledges the ALJ addressed the teacher's questionnaire but argues "he did not explain why the teacher's rating for a serious problem in the area of acquiring and using information did not support a marked limitation in that domain." Id. 12. She argues the ALJ discounted the teacher's suggestion B.M.R. had only a slight problem in the domain of interacting and relating with others, but then did not explain why her suggestion of serious problems in acquiring and using information "was not incorporated into the rating in the domain of acquiring and using information." Id. 13.

Plaintiff argues the ALJ's reliance on the prior administrative medical findings of the state agency consultants is misplaced because the consultants were not able to review the most recent IEP. Id. She argues, "the State [sic] agency consultants' opinions conflict with the record documenting a serious limitation in acquiring and using information [(]as reflected in the teacher questionnaire and recent IEP[)], but the ALJ also failed to resolve this conflict." Id.

The Commissioner argues the state agency consultants' prior administrative medical findings constitute substantial record evidence supporting the ALJ's findings. (Comm'r Br. 10). She argues the state agency consultants' opinions are not stale because B.M.R.'s most recent IEP did not differ significantly from the earlier IEPs reviewed by the consultants and did not suggest a worsening in B.M.R.'s condition. Id. at 10-11. She

8

argues the ALJ reasonably considered the special education teacher's questionnaire. Id. at 11-12. She argues the ALJ discussed the special education teacher's questionnaires, noted he considered them, and that those questionnaires support the ALJ's finding of less than a marked limitation in the domain of acquiring and using information. (Comm'r Br. 12).

The Commissioner also points to additional record evidence supporting the ALJ's decision. Id. 13-15. She argues the ALJ discussed evidence tending to support finding a marked limitation and that tending to support a contrary finding. Id. 13. She points to his discussion of IQ scores and progress in school. Id. She noted the ALJ's consideration of the record regarding B.M.R.'s progress when on his medications and when not on his medications. Id. 14. She notes the ALJ's consideration of group therapy and attendant care notes. Id. The Commissioner argues Plaintiff's challenges to the decision "effectively ask the Court [sic] to re-weigh the same evidence considered by the ALJ and reach a different conclusion about what that evidence showed," but that "is beyond the limited scope of the Court's [sic] review under the substantial evidence standard." Id. 14-15.

The Commissioner counters Plaintiff's assertion that even with improvement B.M.R. was still well-below average in his ability to understand and use information:

> While test scores showed below average reading and math abilities, he was reading "at the late 1st to early 2nd grade level independently"—only "a slight gap between [B.M.R.] and his peers," according to his IEP. Moreover, he was covering the same math materials as others in his class but at a slower pace and with more assistance. The ALJ reasonably found that this evidence supported a finding of less than marked impairment in the domain of acquiring and using information.

9

Id. 15 (citations to IEP omitted).

The Commissioner quotes from the 2019 IEP to argue that B.M.R.'s "accommodations were far from 'extensive:'" He had "the capability to spend the majority of the school day in the general classroom." He could "follow[] directions, complete assignments, and stay organiz[ed] at the same level as other second graders." he had "done well . . . during his second grade school year but he d[id] participate in the low math group"—alongside one-third of his classmates—"which move[d] at a slower pace with additional staff present to help students but still use[d] the same curriculum, covering the same skills." He did not receive any modifications to daily work or tests; he completed the same work given to his peers. He had "been able to complete written assignments adequately in the general classroom without needing modifications made to the work." His study skills were "similar to those of same-age peers." (Comm'r Br. 15-16) (quoting R. 272, 273, 275, 278, 279). The Commissioner concludes, "B.M.R.'s 2020 IEP showed a similar level of accommodation. He remained in the low tiered math class (covering the same materials as his peers, but at a slower pace and with more assistance). He understood the concepts being taught, but at a slower pace than his peers." Id. 16 (citations omitted, citing R. 2150).

In her Reply Brief, Plaintiff asserts the Commissioner's "argument highlights the same mistakes that the ALJ made, namely, failing to account for the significant special services B.M.R. received to make the headway in school that he did." (Reply 2). She argues that the Commissioner missed the point of Plaintiff's questioning the ALJ's consideration of Ms. Thomas's questionnaire because the ALJ found the opinion

10

consistent with the IEP and the school records but found her opinion regarding the domain of interacting with others inconsistent with the record as a whole. She argues the ALJ also found Ms. Thomas's opinion regarding the domain of acquiring and using information inconsistent with the record but failed to explain why or to resolve the ambiguity created thereby. (Reply 3). She concludes, "What's more, any rationale provided by Defendant constitutes no more than post hoc rationalization for the deficiencies in the ALJ's decision." Id. (citing Burlington Truck Lines, Inc. v. U.S., 371 U.S. 156, 168-169 (1962)).

### A.     The ALJ's Relevant Findings

The ALJ found B.M.R. has severe mental impairments of "personality disorder, borderline intellectual functioning, intermittent explosive disorder, anxiety disorder, attention deficit/hyperactivity disorder, and an impulse control disorder." (R. 16) (bold omitted). He found the claimant's impairments do not meet or medically equal the severity of any impairment in the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1, Pt. B. Id. at 16-18. In making this determination, the ALJ considered the claimant's limitations in the four broad areas of mental functioning described by the Commissioner—the "paragraph B" criteria. Id. at 17-18. He found the claimant has moderate limitations in the areas of understanding, remembering, or applying information; concentration, persistence, or maintaining pace; and adapting and managing oneself. Id. He found the claimant has a marked limitation in the area of ability to interact with others. Id. The ALJ noted, "With medication, the claimant's IEPs indicated he was able to complete written assignments adequately in the general classroom without

modifications although he needed to be reminded to slow down and take time to make his handwriting legible. (R. 17).

The ALJ explained that when assessing functional equivalence in accordance with Social Security Ruling (SSR) 09-1p he was to evaluate "the 'whole child' by considering how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs." Id. at 18. He explained he was to "compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments." Id.

The ALJ noted that in accordance with 20 C.F.R. § 416.924a(a) and SSR 09-2p he had "considered all of the relevant evidence in the case record" and found B.M.R. has "less than a marked limitation in acquiring and using information," and "a marked limitation in interacting and relating with others." Id. at 19. He found the allegations in the record "concerning the intensity, persistence and limiting effects of [B.M.R.'s] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. He noted Plaintiff's testimony that B.M.R.:

> receives extra time on assignments, an in class aide, and assistance in the resource room secondary to below average reading and math skills. He also attends medication management every 60 to 90 days, aftercare meetings three to four times a week, and group therapy four days a week.

Id. 19-20. The ALJ explained his evaluation of the first domain

> First, the undersigned finds the claimant has less than marked limitations in the first and [second] domains, acquiring and using information and

12

> attending and completing tasks. In March 2019, while in the second grade, the claimant had a first grade reading level and a second grade math level. However, he had moved up several reading levels and completed his written assignments adequately in the general classroom without modifications to assignments.
>
> Around the same time, intellectual testing revealed a Full Scale IQ of 73, but the scores were "cautioned" because he had difficulty attending during the assessment. Nevertheless, he continued to show progress in his reading comprehension, and by February 2020, he was provided grade level materials in math although he continued to complete the tasks at a slower pace. Without medication, the claimant exhibited significant hyperactivity at least once a week, but with medication, he was not as impulsive and was generally redirectable. In March 2020, his medication provider noted his ADHD was under reasonable control, and the claimant reported he could perform household chores, such as laundry, without prompting. This observation was further supported by group therapy and attendant care notes. For example, in April 2020, he took his medication after exhibiting elevated energy at the beginning of a session, and he appeared calmer by the end of the session. Similarly, he was observed doing flips on his bed and leaving the room during a group Zoom session, but he responded positively to redirection. Therefore, the undersigned finds the record as a whole is inconsistent with marked limitations in the first and [second][3] domains: acquiring and using information and attending and completing tasks.

(R. 20) (citations omitted).

The ALJ discussed the opinion evidence at issue, explaining he found:

> the State [sic] agency psychological and medical consultants' initial opinions and opinions upon reconsideration are persuasive because they are supported by narrative reports of the evidence considered and they are consistent with the claimant's ongoing mental health treatment, intellectual testing and his below average reading and math skills. However, the undersigned finds the opinion upon reconsideration that he has marked limitations in interacting and relating with others, and the initial opinion that he has less than marked limitations in his ability to care for himself, is more persuasive. These findings are consistent with the record as a whole, including reports that he engaged in self-harm by his head on the wall [sic],

---

[3] The ALJ's decision refers to the "third" domain, however "attending and completing tasks" is the second domain. (R. 20).

13

>his need to be prompted to complete self-care, and reports that he continued to have anger outbursts although his ADHD was reasonably controlled with medication management.
>
>The undersigned also considered the report of Cori Thomas, the claimant's special education teacher.  In March 2019, Ms. Thomas reported the claimant had serious problems providing organized oral explanations and adequate descriptions, recalling and applying previously learned material and applying problem-solving skills in class discussions.  She also indicated he had obvious problems in attending and completing tasks, but only on a weekly basis, no difficulty caring for himself, and no more than slight problems interacting.  Although these reports are generally consistent with the claimant's school records and his IEP, the undersigned finds this report is not consistent with the record as a whole, including reports of ongoing outbursts at home and occasional self-harm.  However, Ms. Thomas is not an acceptable medical source eligible to provide a medical opinion.  Nevertheless, the undersigned has considered Ms. Thomas's report when evaluating the degree of limitation in the claimant's functional capacity.

(R. 21) (citations omitted).

## B.    Analysis

The court finds no error in the ALJ's decision.  As the ALJ found, B.M.R. is a child who has severe mental impairments within the meaning of the Act and the regulations.  Although the ALJ found that B.M.R.'s impairments do not meet or medically equal the criteria of any listed mental impairment, he found B.M.R. has a marked limitation in the basic mental functional area of interacting with others.  (R. 17).  When the ALJ continued his evaluation, to determine whether B.M.R.s impairments functionally equal the severity of the listings, he determined B.M.R. has no limitation in two domains, less than a marked limitation in three domains, and a marked limitation in one domain—interacting and relating with others.  Id. 19.  Plaintiff accepts all of the

14

ALJ's findings except the finding of less than a marked limitation in the first domain—acquiring and using information.

However, Plaintiff does not point to, and the court does not find, record evidence which compels finding the claimant has a marked limitation in acquiring and using information. Plaintiff's argument the ALJ downplayed the extensive accommodations received by the claimant is not supported by the record evidence. To be sure, Claimant's IEP states, "Extra cues/ prompts, inclusion support, additional time, and a separate quiet setting would benefit [Claimant] in his reading class. These would allow him to participate in the general education math" class. (R. 2151). It also notes a "Speech to text feature may benefit [Claimant] in the area of writing, along with extra cues and prompts. [Claimant] needs a modified spelling list." (R. 2152). However the IEP also noted the accommodations actually needed and used. In math, it was noted Claimant was "participating and working nicely" and "He appears to understand the majority of skills presented on grade level but does benefit from being in the low group as described above. This appears to be meeting his needs in this area as he does not utilize any modifications to daily work or tests, completing the work as given to his peers." (R. 2167). The reading discussion is to a similar effect. Claimant "participates in the general classroom's core reading time, completing daily work and unit tests at this time without modifications but with inclusion support. He is able to listen and understand information or details presented and this allows him to complete work well. He does not appear to struggle with comprehension if he is able to read the text at a level appropriate for him or hear/discuss materials that are on grade level." (R. 2169). It reported Claimant was "able

to complete written assignments adequately in the general classroom without needing modifications made to the work." (R. 2170). It went on to note, however, that he "started out okay on weekly unit spelling tests but as the year went on, he struggled more. He now has a shortened list based on the list given to the entire class and is showing more success with this." Id. The evidence clearly shows accommodations but does not compel finding there are such extensive accommodations as would require finding a marked limitation. While Claimant has performed below average on many and well below average on some individual measures of academic achievement or general intelligence, achievement scores or intelligence scores among a population appear as a continuum from very low to very high and not everyone who scores "well below average" even on many individual measures will be found disabled within the meaning of the Act and the regulations. Rather, as the ALJ noted in his decision, in determining functional equivalence the SSA evaluates the "whole child." (R. 18) (citing SSR 09-1p).

Plaintiff's argument the ALJ "failed to resolve the inconsistency between the evidence he found supported by the record and his conclusions about functional equivalency" also fails. (Pl. Br. 8). Plaintiff bases this argument on the fact the ALJ recognized Claimant's special education teacher, Ms. Thomas, found B.M.R. has serious problems in three activities within the domain of acquiring and using information. She implies Ms. Thomas's opinion is inconsistent with finding less than a marked limitation in acquiring and using information, and argues that the ALJ failed his duty to resolve this inconsistency. The court does not agree with the premise that a "serious" problem in

16

three individual activities within the domain of acquiring and using information is inconsistent with finding less than a marked limitation in the domain.

As Plaintiff suggests, Ms. Thomas completed a Teacher Questionnaire regarding Claimant's functioning in the six domains compared to the functioning of same-aged children who do not have impairments. The Teacher Questionnaire form states, in bold font, "If the child is receiving special education services, please be sure to <u>compare his or her functioning to that of same-aged, unimpaired children who are in regular education</u>." (R. 295) (bold omitted, underline in original). The questionnaire asks the teacher to rate each of the first five domains on a list of activities within that domain regarding the amount of problem the child has with that activity according to a five-level rating key: 1 – No problem, 2 – A slight problem, 3 – An obvious problem, 4 – A serious problem, and 5 – A very serious problem. The rating form for Acquiring and Using Information contains a list of ten activities. Ms. Thomas reported that Claimant has a problem with all ten activities. (R. 296). She reported he has a slight problem with two activities, an obvious problem with five activities, and a serious problem with three activities. Id. She reported no activities with which Claimant had a very serious problem. Id. As the ALJ noted in his decision, "Ms. Thomas reported the claimant had serious problems [with the activities of] providing organized oral explanations and adequate descriptions, recalling and applying previously learned material and applying problem-solving skills in class discussions." Id. at 21. The court also notes that a year earlier Ms. Thomas found Claimant had no serious problems in any activity in this domain. (R. 219).

17

Plaintiff does not explain how she determined this mix of slight, obvious, and serious problems with activities in the domain of acquiring and using information equates to a marked limitation in this domain—especially when Claimant has only three activities with a serious problem and no activities with a very serious problem.  Plaintiff acknowledges the ALJ found Ms. Thomas's evaluation of the domain of interacting with others was inconsistent with the record evidence and, by extension, finding the remainder of her "questionnaire consistent with school records and the IEP."  (Pl. Br. 12).  She then argues, "The ALJ subsequently failed, however, to explain why this evidence of a serious problem was not incorporated into the rating in the domain of acquiring and using information."  Id. 13 (citing 20 C.F.R. § 416.926a(e)(2) (The agency will find that a claimant has "a 'marked limitation' in a domain when [his] impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities.")). Plaintiff appears to consider an <u>activity</u> posing a serious problem—or at least three <u>activities</u> posing a serious problem—in this domain is the same thing as an <u>impairment</u> that seriously interferes with the ability to initiate, sustain, or complete activities.  But she appears merely to make that assumption based on the similarity between the words serious in "a serious problem" and seriously in "interferes seriously," without considering any relevant differences between the terms "activities" and "impairments," and points to no authority suggesting that there is an equivalence or any direct relationship.

Moreover, the regulation to which Plaintiff cites provides further explanation of a marked limitation:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

Although there is no evidence Claimant was administered a comprehensive standardized test designed to measure ability or functioning in the domain of acquiring and using information, the 2019 IEP contains several standardized test scores relating to Claimant's performance at school. There are a number of subtest scores between 1 and 2 standard deviations below the mean, but only two subtest scores greater than two standard deviations and less than three standard deviations below the mean. (R. 2168-71). These greater-than-two-standard-deviations scores appeared in the "Verbal Comprehension" and "Processing Speed" scales of the Wechsler Intelligence Scale for Children – Fifth Edition (WISC-V). Id. 2171. However, as the ALJ noted the scores on this test were "cautioned," and "may be an underrepresentation of his ability" because Claimant was distracted and fidgety when taking the test and they also "may reflect his level of function when he exhibits such behaviors." Id. 2172. The WISC-V test results from the 2019 IEP are also included in the 2020 IEP. Id. 2152. They are the only test results in the 2020 IEP for which the record reveals the mean and standard deviation. That IEP also reports Claimant's results on an Aimsweb Reading test for the 2019-2020 school year reflecting a Composite score of 16, at the 4th percentile; a Vocabulary score of 52, at the 6th percentile; a Reading Comprehension score of 13, at the 16th percentile;

and an Oral Reading Fluency score of 5, at the 4th percentile. (R. 2151). The record does not reveal the mean score or the standard deviation for this test, so it is impossible for the court (or the ALJ) to know whether Claimant's scores are within two standard deviations of the mean. However, for the WISC-V, the scores which were at the 2nd percentile were more than two standard deviations below the mean whereas the scores at the 3rd, 4th, and 5th percentile were between 1 and 2 standard deviations below the mean. Id. 2171. Although Claimant's scores on the Aimsweb test are described as "well-below average," in these circumstances that cannot be construed as evidence to compel a finding contrary to that reached by the ALJ in this case.

The ALJ explained his decision and cited evidence supporting his decision. The court's consideration above of the evidence supporting Plaintiff's contrary conclusion demonstrates that she has not met her burden to show an inconsistency between the evidence upon which the ALJ relied and his conclusion Claimant has less than a marked limitation in acquiring and using information. Thus, Plaintiff has shown no inconsistency requiring the ALJ's resolution.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 9, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**